UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE WOODEN,<br>    Petitioner, | :<br>:<br>: |
| v. | :   No. 23-cv-1366 |
| SUPERINTENDENT JOSEPH TERRA,<br>    Respondent. | :<br>:<br>: |

**O P I N I O N**
Report and Recommendation, ECF No. 12 – Adopted, in part
Amended Habeas Corpus Petition, ECF No. 2 - Denied and Dismissed

**Joseph F. Leeson, Jr.**                                                                                                                               **September 23, 2024**
**United States District Judge**

**I.    INTRODUCTION**

Petitioner Steve Wooden is serving an aggregate sentence of twenty to forty years following his open guilty plea in 2008 to charges of attempted rape and robbery. Following his unsuccessful Post Conviction Relief Act efforts, Wooden filed a habeas petition arguing that his counsel was ineffective at both the guilty plea and sentencing phases of his proceedings. Magistrate Judge Wells issued a Report and Recommendation recommending that the claims be dismissed to which Wooden has filed the instant objections. For the reasons that follow, his objections are overruled, the R&R is adopted in part, and the petition is denied and dismissed.

**II.   BACKGROUND**

In the R&R, Magistrate Judge Wells reviewed the factual and procedural history of the case. *See* R&R, ECF No. 12. Wooden does not object to the summary and, after review, it is adopted and incorporated herein. Of note, Wooden pled guilty to attempted rape and robbery in 2008 and was sentenced to consecutive 10-to-20-year terms. On April 12, 2023, he filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on two (2) grounds: (1) his plea counsel was ineffective for incorrectly advising him that he would receive a sentence of five to ten years if he entered an open guilty plea; and (2) his plea counsel was ineffective for failing to present Wooden's "mental health issues" at sentencing.  *See* Am. Pet., ECF No. 2.[1]

Magistrate Judge Carol Sandra Moore-Wells issued a Report and Recommendation ("R&R") on March 27, 2024, holding that both claims lack merit under *de novo* review and recommending that the petition be denied without a hearing.  Wooden filed objections on March 28, 2024, essentially reiterating the arguments in his petition and attaching a previously omitted affidavit.  For the reasons that follow, the Court overrules the objections and adopts the R&R in part.

**III.   STANDARDS OF REVIEW**

     **A.   Report and Recommendation – Review of Applicable Law**

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a *de novo* review of those portions of the report to which specific objections are made.  28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation *de novo* under 28 U.S.C. § 636(b)."  *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016).  In the absence of a specific objection, the district court is not statutorily required to review the report, under *de novo* or any other standard.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 152 (1985).  Nevertheless, the Third Circuit Court of Appeals has held that it is better practice to afford some

---

[1]   The operative Petition is filed at ECF No. 2.  Petitioner's initial Petition, *see* ECF No. 1, was uploaded with errors caused by technological difficulties.

level of review to dispositive legal issues raised by the report, *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987), *writ denied* 484 U.S. 837 (1987); therefore, the court should review the record for plain error or manifest injustice. *Harper v. Sullivan*, No. 89-4272, 1991 U.S. Dist. LEXIS 2168, at *2 n.3 (E.D. Pa. Feb. 22, 1991); *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998). The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

B.     **Habeas corpus petitions under 28 U.S.C. § 2254 - Review of Applicable Law**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Where a petitioner has failed to properly present his claims in the state court and no longer has an available state remedy, he has procedurally defaulted those claims. *See id.* at 847-48. An unexhausted or procedurally defaulted claim cannot provide the basis for federal habeas relief unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 732-33, 750 (1991) (explaining that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him"). The Supreme Court has held that the ineffectiveness of counsel on collateral review may constitute "cause" to excuse a petitioner's default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). The fundamental miscarriage of justice exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no

reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "Put differently, the exception is only available when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) (quoting *McQuiggin*, 133 S. Ct. at 1936; *Schlup*, 513 U.S. at 316).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotations omitted); *See also* 28 U.S.C. § 2254(d);[2] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding that there is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" because the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable); *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable."). Additionally, "a federal habeas court must afford a state court's factual findings a presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008). The habeas petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[2] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . .; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

### C.     Claims of Ineffective Assistance of Counsel - Review of Applicable Law

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984).  There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions.  *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland* test.  *Id.* at 86.  To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of counsel's challenged conduct").  The court must consider the totality of the evidence and the burden is on the petitioner.  *Id.* at 687, 695.

When considering ineffective assistance of counsel claims under § 2254, the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable.  *Knowles*, 556 U.S. at 123.  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.* (describing "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard").

IV.     ANALYSIS[3]

    A.     **Ineffectiveness at Guilty Plea Stage**

Wooden objects to the R&R's conclusion that he failed to meet either of *Strickland*'s elements as to his first claim. After a *de novo* review, the Court reaches the same conclusion as the Magistrate Judge.

In the context of a guilty plea[4], "the 'prejudice,' requirement [of *Strickland*] focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Wooden cannot show prejudice because the record is abundantly clear that Wooden was informed of the proper range of sentence and nevertheless chose to plead guilty. First, he signed a written guilty plea colloquy outlining the permissible range of sentence for each offense as a minimum of 10 to a maximum of 20 years of incarceration. *See* ECF No. 16 at 68-72. The plea was also open. *Id*.

---

[3] The Court writes for the parties and assumes their familiarity with the procedural and factual history of this case. Where the relevant factual and/or procedural background of the case appears in the state court decisions previously rendered in the case, and where that background is uncontested and supported by accurate citations to the underlying record (most commonly Notes of Testimony ("N.T.") of the trial court), this Court will cite to those decisions rather than to the underlying record itself.

[4] As noted in the R&R, the Superior Court's analysis was limited to whether Wooden's plea was voluntary. Since this is the wrong standard, the Court sets forth the proper standard and reviews the petition *de novo*. *See Vickers v. Superintendent Graterford SCI,* 858 F.3d 841, 849 (3d Cir. 2017) ("when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred.")

Second, in the following exchange, Wooden was fully apprised of the consequences of his plea:

MR. CONROY: And it has been agreed to between myself, yourself, and the district attorney. And in that agreement, you are to plead guilty to attempted rape in the first degree, and robbery in the first degree. Now, on both of these charges you can receive 10 to 20 years. Now, there has been no agreement between myself, yourself, and the district attorney as to how many of those years you are to serve. That is going to be solely left up to the Judge as part of the agreements, okay?

THE DEFENDANT: Yes.

MR. CONROY: Now, they can run that what's called "consecutively" 10 to 20, and then 10 to 20; or they can run "concurrently" together, 10 to 20. So they can combine the cases to make it 10 to 20, or they can go from end to end and you could serve up to 40 years of incarceration. Do you understand that?

THE DEFENDANT: Yes.

. . .

MR. DAVIS: Your Honor, could I ask one question before we move away from the colloquy stage?

THE COURT: Yes.

MR. DAVIS: Mr. Wooden, I'm Bill Davis, the assigned ADA prosecuting your case. You may have already talked to your lawyer about this, but I just want to make sure that the record is clear: You do know that the minimum sentence that you could get because of your prior record is 10 to 20 years in this case. Do you understand that?

THE DEFENDANT: Yes.

MR. DAVIS: And you're aware that it's up to the Judge to go above that or impose that, but he can't go below that. Do you understand that?

THE DEFENDANT: Yes.

*Commonwealth v. Wooden*, 284 A.3d 885, at \*4 (Pa. Super. Ct. 2022) ("*Wooden II*").  In his objections, Wooden attempts to read a tremendous amount of ambiguity into the words "can" and "could" to render the plea uninformed and thus suggest that he would not have taken the plea absent his counsel's purportedly erroneous advice.  Specifically, Wooden argues that the portions of the record apprising him that "on both of these charges you CAN receive 10 to 20 years" and "that the minimum sentence that you COULD get because of your prior record is 10 to 20 years in this case" would not be reasonably understood to mean that 10 to 20 years was the mandatory minimum penalty in the case.  *Id.* (emphasis added).  The Court is unconvinced.  Wooden was clearly aware of the minimum and maximum potential sentence as evidenced by both the written and oral colloquies.  Thus, his claim that he would not have pled guilty and would have instead proceeded to trial had he been properly informed of the possible range of sentence lacks merit because he was indeed apprised of the possible sentence and nevertheless entered the plea.

Nor has Wooden satisfied *Strickland*'s first element because he offers no evidence that his counsel provided him incorrect legal advice at sentencing.  In the same colloquy, sentencing counsel advises Wooden that: 1) there exists no agreement between the Commonwealth and the defense as to sentence; 2) the sentence would be left entirely to the Judge's discretion; and 3) Wooden could serve 10 to 20 years where the sentences run concurrent or up to 40 should they run "end to end." *Id*.  Accordingly, the Court agrees with the R&R's conclusion that Wooden has failed to satisfy either of *Strickland*'s elements with respect to the first claim.

Therefore, the Court overrules Wooden's objection and adopts the R&R's findings in Section II.B.1.

### B.   Ineffectiveness at Sentencing Stage

Wooden also objects to the R&R's finding that his ineffective assistance of counsel at sentencing claim lacks merit.  After a *de novo* review, the Court finds Wooden's claim meritless, but for different reasons than the R&R.

In the relevant PCRA, Wooden argued that his counsel was ineffective for failing to provide mitigating evidence of Wooden's poor mental health at sentencing.  In support, Wooden offered the following sworn affidavit which he neglected to attach to his habeas petition.  In relevant part, it reads:

> Mr. Conroy Esq. at his time of representing me never during that time sought to get any of the information I gave him pertaining to my being seen by a Therapist or Psychologist at 64 and Woodland Ave where he could have verified that not only was I being treated for P.T.S.D. but also depression and drug treatment as well as placed on the following three medications, 1. Resperdol, 2. Invega, 3. Welbutrin XR.
> Nor did he reach out to my family members to verify the two attempted suicides where I was taken to Pennsylvania Hospital in 2007, as well Mercy hospital in Southwest Phildelphia [sic] also in 2007.  As well he would have found out what sent me on this breakdown.  Yet if the Court records are checked Mr. Conroy asked for three continuances and did nothing.

ECF No. 13-3; ECF No. 16 at 470.  Thus, the argument is that Wooden was prejudiced where there is a reasonable probability that this added context would have changed the result of the sentencing.  *See Porter v. McCollum*, 558 U.S. 30, 41 (2009) ("[Petitioner] must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence.")

This claim was presented to the Superior Court which dismissed it, reasoning that Wooden "fail[ed] to specify what information about his mental health would not have been included in either the PSI or the mental health evaluation that were completed before his

sentencing in October 2008." *Wooden II* at *5. The Court finds that this is not an unreasonable application of clearly established Federal law.

In the R&R, Judge Wells concluded that the Superior Court's adjudication was based upon an unreasonable determination of the facts, interpreting the Superior Court's opinion to reason that Wooden failed to present *any* evidence to support any mental health illness. In other words, the Magistrate Judge found that the Superior Court ignored the affidavit as evidence. *See* R&R at 9 ("the Superior Court ignored the information contained in the Petitioner's Affidavit."). The Court disagrees with this reading of *Wooden II*. Rather, the Superior Court held that Wooden failed to specify what *from the affidavit* was not included in the PSI or MHE considered by the Court. More simply, Wooden does not indicate what information from his affidavit was included in the MHE and PSI (and was thus presumably figured into the Judge's sentencing considerations) and what information went undiscovered due to counsel's alleged ineffectiveness. Without that distinction, the Superior Court reasonably held that Wooden failed to show prejudice because he had not explained what parts of his mental health history went unconsidered by the sentencing court and thus could have altered the outcome of the proceeding.[5]

---

[5] Even if this Court agreed with the Magistrate Judge's reading of *Wooden II*, Petitioner's argument also fails without § 2254's deference to the Superior Court's opinion. At the outset, the Court notes that its analysis is somewhat hampered by omissions in the record. The October 2, 2008, sentencing transcript is no longer available. Philadelphia's Court Reporter, Digital Recording and Interpreter Administration apprised Wooden's PCRA Counsel that the October 2, 2008, notes of testimony were no longer available because, "[e]xcept for homicide, Court Reporter Administration is only required to store Criminal Court hearings for seven years, after which time they are disposed of." ECF No. 16, Ex. 1, at 262. The absence of this record was also noted by Judge Brandies-Roman in her January 14, 2022, 1925(a) Opinion. *Id*. at 529. The record provided is also devoid of the Presentence Investigation Report or the Mental Health Evaluation ("MHE"). Such materials would have been useful in determining what of Wooden's affidavit was included in the PSI and MHE provided to Judge Trent.

Accordingly, the Court overrules Wooden's second objection to the R&R.

C. **Certificate of Appealability**

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (quoting 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the denial of a habeas petition is based on procedural grounds and the Court does not reach the underlying constitutional claim, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

---

Nevertheless, it is clear that Judge Trent, the sentencing judge, was very much aware of the averments in the affidavit. Judge Trent was aware that Wooden had seen a mental health professional, was diagnosed with P.T.S.D. and depression, and was on medication for treatment of these conditions. *See* ECF No. 20, Ex. 1 at 526-27. Without the MHE, PSI report, or the sentencing transcript, the Court is unable to determine if Judge Trent was apprised of the suicide attempts. However, it is clear from the record that the Judge was concerned with Wooden's mental health troubles, going so far as to order the MHE. Notwithstanding his awareness of the state of Wooden's mental health, Judge Trent sentenced Wooden to twenty to forty years imprisonment. The Court concludes that there is no reasonable probability that any objective fact finder, possessing Judge Trent's awareness of Wooden's mental health and presented with the sworn affidavit, would reach a different result in the proceeding. *Saranchak v. Beard*, 616 F.3d 292 (3d Cir. 2010) (noting that *Strickland* requires that the habeas court consider the effect the omitted evidence would have "on an unspecified, objective fact finder" as opposed to the subjective views of the particular sentencing judge.) Accordingly, the Court finds that Wooden has failed to demonstrate prejudice because Wooden's arguments are wholly speculative. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (reasoning that the petitioner cannot meet the *Strickland* standard by putting forth "vague and conclusory allegations that some unspecified and speculative testimony" may have warranted relief.)

In the Court's view, Wooden has failed to demonstrate his entitlement to a COA under the applicable standard, and no COA will be issued.

## V.    CONCLUSION

After *de novo* review and for the reasons set forth herein, the R&R is adopted in part. The Magistrate Judge's recommendation to deny and dismiss the habeas petition is adopted. A certificate of appealability ("COA") is denied because Wooden has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason find the Court's assessment debatable or wrong.

A separate Order follows.

                                                BY THE COURT:

                                                */s/ Joseph F. Leeson, Jr.*_____
                                                JOSEPH F. LEESON, JR.
                                                United States District Judge